In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-1888

DAVID FURRY and DIANE NYE,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-6138—**Blanche M. Manning**, *Judge*.

ARGUED SEPTEMBER 26, 2012—DECIDED MARCH 13, 2013

Before EASTERBROOK, *Chief Judge*, and WOOD and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. In this Federal Tort Claims Act case, David Furry and Diane Nye allege that Ronald Williams, a substitute letter carrier for the United States Postal Service, negligently caused a vehicle collision that resulted in substantial injuries. Furry and Nye, who were in the station wagon that made contact with Williams's postal truck, did not see Williams's

vehicle before the accident or observe the collision. At the bench trial, they argued that the vehicle damage, Williams's lack of credibility, and his flight from the scene of the accident all proved that Williams acted negligently. The district court declined to find that Williams breached his duty of ordinary care, and we conclude that the court's factual finding on this issue was not clearly erroneous. To prevail, Furry and Nye needed to show by a preponderance of the evidence that Williams initiated the contact between the vehicles. And because they relied on speculation rather than evidence, they failed to meet their burden. We affirm.

## I. BACKGROUND

On the afternoon of May 15, 2007, David Furry, Diane Nye, and their daughter were traveling southbound on Grove Avenue, a one-way street in Berwyn, Illinois. Furry was driving the family's 1978 Ford LTD Country Squire station wagon. It was raining heavily that afternoon and visibility was limited. At the same time, Ronald Williams, a recently hired substitute letter carrier for the United States Postal Service ("USPS"), was sitting in a postal truck that was parallel parked on the right side of Grove Avenue at a slight angle with the front of the truck sticking out. Williams had just visited the home of a friend and, in violation of USPS rules, was away from his designated route.

As Furry's station wagon passed Williams's postal truck, the two vehicles collided. The quarter panel and

bumper on the right rear of Furry's car made contact with the left front bumper of the postal truck. The impact pushed Furry against the driver's side window and Nye forward against her seatbelt. Furry and Nye did not see the postal truck before the impact, nor did they see the collision.

After the accident, Furry and Nye examined the damage to their station wagon, which suffered minimal damage to the right rear quarter panel and the right side of the rear bumper, which came off its mount. Williams pulled the postal truck away from the curb, drove several car lengths away, parked, and exited the truck. Furry asked Williams to call the police because Furry and Nye did not have cell phones. Williams offered Furry five hundred dollars to not report the accident and to give Williams an opportunity to leave the scene. While Furry searched for straps to lift the station wagon's bumper off the ground, Nye talked to Williams, who said, "Oh, my God. Oh, my God. Oh, this is great. I'm going to get fired. I have to get the rest of this mail delivered. I'm sorry." After Nye asked Williams for his information and told him to call the police, Williams then stated again that he was sorry and said, "Oh, my God. Oh, my God. I am going to get fired. I have to get this mail delivered or I'll be fired." Nye again told him to call the police, but Williams walked back to the postal truck, drove away from the scene, and returned to his postal route. Nye wrote down the number of Williams's vehicle.

After searching for Williams for fifteen to twenty minutes, Furry and Nye returned to their home. Ninety

minutes after the collision, Furry called the Berwyn Police Department to report the accident. Officer James Tadrowski met Furry and Nye at their residence. They told the police officer their version of events—that Williams hit their vehicle when he pulled out of his parking space, that they talked to Williams and asked for his information, and that he would not give it to them because he was afraid he would lose his job if the crash were reported. Officer Tadrowski returned to the scene of the collision but did not see any evidence of a crash. He did not take any paint scrapings, photographs, or measurements of the vehicles. Later that day, he located Williams and questioned him at the Furry/Nye residence with Lee Junious, a USPS customer service supervisor. Williams denied any involvement in the collision and claimed that he had never seen Furry or Nye before. Williams resigned from USPS the following day.

After exhausting their administrative remedies, Furry and Nye sued the United States under the Federal Tort Claims Act ("FTCA"), alleging that Williams's negligence caused them $45 million in damages. The court held a bench trial in July and August 2011. The plaintiffs testified that they believed that Williams caused the accident by driving the postal truck out of its parking space into their station wagon. Officer Tadrowski also testified about the damage to the vehicles and his interactions with the plaintiffs and Williams, but the district court did not find him "qualified to opine as to which vehicle struck the other." The plaintiffs did not offer any expert testimony on the cause of the collision.

Even though both parties subpoenaed Williams, he did not appear at the bench trial. After the plaintiffs declined to compel Williams's attendance, the parties agreed that he would testify by deposition. In his deposition testimony, Williams's account of the incident differed from Furry's and Nye's in several ways. Most importantly, he claimed that the postal truck was stationary at the time of the collision and that he had not yet begun to exit the parking space when the station wagon clipped his vehicle. When the plaintiffs' counsel asked Williams to reconcile his assertion that the postal truck was not moving with the fact that the back end of Furry's car came into contact with the postal truck, Williams responded that he had no explanation and that it was "mystical." In addition, Williams testified that Furry accepted the offer of five hundred dollars, while the plaintiffs do not mention any acceptance. Finally, Williams asserted that he did not speak with Nye at the scene.

At the conclusion of the bench trial, the court took the matter under advisement. The parties subsequently filed proposed findings of fact and memoranda of law.

In its findings of fact, the court credited the plaintiffs' testimony that "the station wagon impacted the postal vehicle," but it noted that because they did not see the postal truck or the collision, "their belief [that Williams initiated the collision] is not based on any first-hand observation of movement by the postal vehicle, but rather is based on the fact that they felt an impact."

The court stated that it "had no opportunity to gauge Williams' credibility for itself because the plaintiffs

chose not to ask the court to compel his attendance at trial and decided, instead, to rely on his deposition testimony." The court then explained that even if it were to assume that Williams lacked credibility and to consider the plaintiffs' testimony not rebutted, their "testimony establishe[d] only that their station wagon and the postal vehicle collided, not which vehicle was responsible for the collision." The court found that there were other possible causes of the accident, including Furry's vehicle sideswiping the postal truck or hydroplaning (recall that there was heavy rain at the time) into the postal truck unbeknownst to the plaintiffs. And because, according to the parties, USPS could have fired Williams for either being involved in any accident, regardless of fault, or being away from his designated route, the court would not infer that negligence was the only possible reason Williams left the scene.

The district court entered judgment in favor of the United States, finding that the plaintiffs failed to meet their burden of proof on breach of duty by a preponderance of the evidence because they offered only "sheer speculation"—not evidence or expert opinion—to support their position that the damage to their vehicle and the postal truck conclusively proved that Williams initiated the contact. Furry and Nye appeal.

## II. ANALYSIS

In the FTCA, 28 U.S.C. §§ 1346(b)(1) & 2671-80, Congress waived the United States's sovereign immunity for

suits brought by persons injured by the negligence of federal employees acting within the scope of their employment. *Emp'rs Ins. of Wausau v. United States*, 27 F.3d 245, 247 (7th Cir. 1994). The "law of the place where the act or omission occurred" governs FTCA claims, 28 U.S.C. § 1346(b)(1), so we rely on Illinois law here. To succeed on a negligence claim in Illinois, a plaintiff "must allege and prove that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999). The parties agree that Williams had "a duty to exercise reasonable care in the operation of his vehicle and to have his vehicle under such control as [would] enable him to avoid collision with other vehicles or pedestrians." *Moran v. Gatz*, 62 N.E.2d 443, 444 (Ill. 1945). So the issues presented for resolution at the bench trial were breach, proximate cause, and damages.

### A. Clear Error Standard of Review

In an appeal from a bench trial, we review the district court's findings of fact and applications of law to those findings for clear error. *Trs. of Chi. Painters & Decorators Fund v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 785 (7th Cir. 2007). We will find clear error when we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). And "[w]e may have such a conviction if 'the trial judge's interpretation

of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence.'" *EEOC v. Sears Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir. 1988) (quoting *Ratliff v. City of Milwaukee*, 795 F.3d 612, 617 (7th Cir. 1986)).

Ordinarily, breach and proximate cause are questions of fact reviewed for clear error. *Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) (applying Illinois law). But when "there is no material issue regarding the matter or only one conclusion is clearly evident," breach and proximate cause become questions of law reviewed de novo. *Williams v. Univ. of Chi. Hosps.*, 688 N.E.2d 130, 134 (1997); *accord Adams v. N. Ill. Gas Co.*, 809 N.E.2d 1248, 1257 (Ill. 2004) ("the issues of breach and proximate cause are factual matters for a jury to decide, provided there is a genuine issue of material fact regarding those issues") (internal citation omitted).

On appeal, Furry and Nye argue that this court should treat proximate cause as a question of law because there is only one possible cause of the car accident—Williams driving the postal truck into their station wagon. We assume that the appellants intended to argue that we should treat *breach of duty* as a question of law because the district court entered judgment based on the plaintiffs' failure to prove breach and stated that it "need not address the issues of proximate cause and damages."

The appellants' argument is unpersuasive. Because they offered no eyewitness testimony regarding the

cause of the accident, "the facts of the collision[] had to be inferred from the circumstances." *Miller v. Pillsbury Co.*, 211 N.E.2d 733, 734 (Ill. 1965). And the circumstances here require some consideration of the context of the crash, the condition of the vehicles, the angle and degree of impact, the vehicle's traveling speed, and the effect of the weather. The appellants present what they consider to be a "commonsense" analysis of the damage to conclude that the only way the right rear quarter panel and right rear bumper of their car and the left front bumper of Williams's truck would have suffered the type of damage they did would have been if Williams pulled out of his parking space and hit their station wagon. But even if their analysis offers a plausible explanation for the collision, it by no means necessarily excludes all other possible causes, including those suggested by the district court. And for this reason, breach remains a question of fact reviewed for clear error.

### B. The District Court's Breach Finding Was Not Erroneous

Having determined that breach is a question of fact here, we turn now to the appellants' substantive arguments. First is their argument that the damage could only have resulted from Williams's negligence, an argument we have already called into question. The appellants offered no expert testimony on accident reconstruction to explain why their account was likely more accurate than another scenario in which Williams did

not breach his duty of ordinary care. Mere speculation, which is all they offer, is not sufficient to meet their burden of proof.

The appellants next argue that Williams's testimony was so incredible that it proved their version of events. This is also unpersuasive. The district court declined to find that Williams lacked credibility because it did not have an opportunity to observe his demeanor. On appellate review, we defer to the district court's credibility determinations "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575. And "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id*. at 575-76; *see also Mucha v. King*, 792 F.2d 602, 605-06 (7th Cir. 1986) ("[T]he main reason for appellate deference to the findings of fact made by the trial court is not the appellate court's lack of access to the materials for decision but that its main responsibility is to maintain the uniformity and coherence of the law . . . .").

Although the district court declined to determine Williams's credibility, the lack of a determination does not matter here. The appellants want us to conclude that Williams is not credible because he initially lied about his involvement and fled the scene of the accident, but

that behavior does not necessitate a finding that every-thing Williams says lacks credibility. Neither does his inability to reconcile his account of the accident with the vehicle damage, as the appellants argue. As we have discussed, Furry and Nye's version of events requires accident reconstruction testimony; the district court did not err by declining to hold Williams's inability to provide that testimony against him. But most impor-tantly, as the district court noted, even if it excluded Williams's testimony as not credible, the appellants did not satisfy their burden of proof by a preponderance of the evidence. *See NLRB v. Luois A. Weiss Mem'l Hosp.*, 172 F.3d 432, 446 (7th Cir. 1999) ("An absence of evidence does not cut in favor of the one who bears the burden of proof on an issue."). Furry and Nye testified that they did not witness the collision or even see the postal truck before the impact. And because they offered no evidence to either support their specula-tion or to discount other possible causes of the collision, they failed to meet their burden of proof.

Finally, the appellants argue that the district court could have inferred Williams's negligence from the fact that he fled the scene of the collision. *See Peterson v. Henning*, 452 N.E.2d 135, 138 (Ill. App. Ct. 1983) ("A defendant's flight from the scene of the accident can be interpreted as an admission of his negligence for if he were 'guilt free' it is reasonable to assume he would stop to ascertain the nature of the accident or the extent of the victim's injuries."). But the appellants suggested alternate reasons for the flight: Nye testified that Williams stated several times that he needed to return

to his route or he would be fired. And Nye also told Officer Tradowski that Williams did not want to provide them with his information because he was afraid that he would lose his job if the collision were reported. Furthermore, Williams left the scene after stopping and having the opportunity to observe that no one was visibly injured and that there was only minor damage to the station wagon. Leaving under these circumstances does not necessarily signal culpability, and given the other possible explanations for Williams's flight from the scene, the district court did not clearly err by declining to consider it evidence of negligence.[1]

---

[1] We note that the appellants' recitation of the facts in their appellate brief suggests other potential evidence of negligence. First is the statement that after the collision, "He [Williams] said he was sorry for hitting them." As we noted at oral argument, the district court did not address this potential admission by Williams.

In their post-trial supplemental statement of facts below, Furry and Nye said that Williams said "he was sorry." Both of these statements appear to be based on Nye's testimony. She first testified that Williams said "I'm sorry." But at a later point in the trial, she later identified Williams as "the one that came out and said: I'm sorry for hitting you." Furry and Nye did not argue that this latter statement is evidence of Williams's breach either at trial (and they did not include it in their post-trial proposed findings of fact or argue it in their memorandum of law) or in their appellate briefs.

(continued...)

Ultimately, the appellants' arguments on breach rest on sheer speculation. Faced with the lack of evidence to either support the appellants' beliefs or discount alternate explanations not associated with Williams's breach of ordinary care, the district court did not err by finding that the appellants failed to meet their burden of proof.

---

[1] (...continued)

It is possible that Nye inadvertently attached the "for hitting you" explanation to Williams's "I'm sorry." Or it could be that those were Williams's exact words. But the appellants never discussed the potential importance of the statement. So despite the presence of what a factfinder could interpret as an admission of breach of duty and the fact that the district court did not make a factual finding about whether Williams admitted culpability, we will not remand this case on this issue because Furry and Nye never attempted to advance this argument. *See Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720-21 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them."); *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997) ("The well-established rule in this Circuit is that a plaintiff waives the right to argue an issue on appeal if she fails to raise the issue before a lower court."); *Nemmers v. United States*, 795 F.2d 628, 633 (7th Cir. 1986) (in a bench trial, Federal Rule of Civil Procedure 52(a) "requires the court to make findings of fact and conclusions of law on all material, *disputed* issues (emphasis added)). Similarly, because Furry and Nye only argued that Williams's offer to pay Furry five hundred dollars was evidence of Williams's lack of credibility, we will not remand due to lack of a factual finding about whether that offer was evidence of an admission.

### III. CONCLUSION

For the reasons above, we AFFIRM the judgment of the district court.