In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2604

DAVID A. SCHLEMM,

*Plaintiff-Appellant*,

*v.*

EDWARD F. WALL, Secretary, Wisconsin Department of Corrections, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-272-wmc — **William M. Conley**, *Chief Judge*.

SUBMITTED APRIL 7, 2015 — DECIDED APRIL 21, 2015

Before EASTERBROOK, WILLIAMS, and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. David Schlemm, a member of the Navajo Tribe, has been imprisoned in Wisconsin since 1999. In this suit under the Religious Land Use and Institutionalized Persons Act (RLUIPA or the Act), 42 U.S.C. §§ 2000cc to 2000cc–5, Schlemm seeks an order requiring the prison system to accommodate some of his religious practic-

es. The district court dismissed some of his claims for failure to exhaust intra-prison remedies, see 2014 U.S. Dist. LEXIS 78601 at *19–26 (W.D. Wis. June 10, 2014), and we affirm that aspect of the decision without any need to add to the district judge's analysis. Schlemm's arguments under the Constitution's First and Fifth Amendments (applied to the states by the Fourteenth) we bypass, because the Act provides greater protection. But Schlemm has solid arguments on the two statutory claims on which he exhausted all administrative remedies.

Each autumn members of the Navajo Tribe celebrate a Ghost Feast, part of a harvest celebration that honors the dead through dancing, praying, and eating traditional foods. Wisconsin concedes that this celebration is religious in nature, and the state does not contest Schlemm's contention that he sincerely believes that the "traditional foods" should include game meat (venison). The prison system nonetheless has rejected Schlemm's request for game meat or even ground beef to be included in Indian tacos (meat, shredded lettuce, tomatoes, and onions in frybread shells). Defendants rejected Schlemm's offer to secure a sealed platter of acceptable game meat from an outside vendor. The prison has told Schlemm to use stew from the regular cafeteria line— and this even though the prison system permits Jewish inmates to have outside vendors furnish sealed Seder platters for Passover and permits participants in monthly sweat lodge ceremonies to import packets of appropriate foods.

Defendants maintain that serving venison would be too expensive, would exceed the capacity of institutional kitchens (which unlike restaurants are not set up to serve individually selected meals), and would violate a statewide rule

limiting prison foods to those inspected and certified by the United States Department of Agriculture. The prison system offers Kosher and Halal foods but does not allow any inmate to pick a particular menu (with the apparent exception of the Seder platters and sweat lodge packets).

The Act provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc–1(a). The district court granted summary judgment to the prison system, ruling that the absence of venison for the Ghost Feast does not impose a "substantial burden" on Schlemm's religious exercise. The court added that if this is wrong Schlemm still loses, because the state has a "compelling governmental interest" in holding down costs and using USDA-inspected meats, and that requiring Schlemm to eat whatever the kitchen is serving is the "least restrictive means" of furthering those interests. 2014 U.S. Dist. LEXIS 78601 at *30–36.

Summary judgment requires the court to take all disputed material facts in the light most favorable to the party opposing the motion. Schlemm testified by deposition that game meat during the Ghost Feast is important to him as a religious matter; declarations from other practitioners of Navajo rites and traditions support that view. The district

court thought this inadequate to establish that lack of venison imposes a substantial burden, as we defined that phrase in *Eagle Cove Camp & Conference Center, Inc. v. Woodboro*, 734 F.3d 673, 680 (7th Cir. 2013): to be substantial, a burden must be "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise … effectively impracticable." If that were the standard, then Schlemm would lose, for he still could dance and pray during the Ghost Feast. But two later decisions of the Supreme Court—*Holt v. Hobbs*, 135 S. Ct. 853 (2015), and *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)—articulate a standard much easier to satisfy.

Holt, a Muslim confined in a state prison, believes that he must wear a beard. Although he believes that his faith forbids any shaving or trimming of the beard, he acknowledged the prison's concern about hiding contraband in a long beard and proposed a compromise: a beard one-half-inch long. The prison rejected even that accommodation, but the Supreme Court held that the Act entitles Holt to have a short beard. It concluded among other things that Holt "easily satisfied" (135 S. Ct. at 862) the "substantial burden" requirement because shaving "seriously violates his religious beliefs" (*ibid.*, quoting from *Hobby Lobby*). The Court did not ask whether a requirement to be clean-shaven would make adherence to Islam "effectively impracticable", the language of *Eagle Cove*. As the Court noted in *Holt*, the Act covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000cc–5(7)(A). *Eagle Cove* effectively limits the Act to those beliefs or practices that are "central" to religious beliefs; its approach did not survive *Hobby Lobby* and *Holt*.

The Supreme Court's formulation leaves a lot of uncertainty. How is a court to tell whether a given restriction "seriously" violates or contradicts religious beliefs? What, indeed, does "seriously" mean?—more than "modestly" and less than "overwhelmingly," but there's a lot of space in that range. Schlemm says that inability to eat game meat at the Ghost Feast has a serious effect, and the record is not so lopsided as to permit that contention's rejection on summary judgment. That Schlemm proposed a compromise (ground beef) does not scuttle his claim, any more than Holt's proposed compromise (a short beard) did.

The parties have not joined issue on how to distinguish "serious" from other effects. For now it is enough to say that the district court erred by rejecting Schlemm's position on this paper record. Only two other courts of appeals have addressed the question whether denying access to "traditional foods" for a religious celebration imposes a substantial burden on religion. Both reached the same conclusion we do: the prison system is not entitled to summary judgment. *Haight v. Thompson*, 763 F.3d 554, 564–67 (6th Cir. 2014); *Abdulhaseb v. Calbone*, 600 F.3d 1301, 1319–20 (10th Cir. 2010).

The district court's fallback holding that the state has a "compelling" interest in the "least restrictive" way to resolve a request for Schlemm's proposed accommodation is untenable. Saving a few dollars is not a compelling interest, nor is a bureaucratic desire to follow the prison system's rules. The Act requires prisons to change their rules to accommodate religious practices; rules' existence is not a compelling obstacle to change. The prison system in *Holt* had a rule against beards, but the Court deemed it an inadequate answer to the inmate's request.

The prison system's insistence on USDA-inspected meat hints at a potentially compelling justification: safe food. But for that justification to be "compelling" and the means "least restrictive," the prison system would have to prove that (a) all meats not inspected by the USDA are unsafe, and (b) no USDA-inspected venison products are available. The Court stressed in *Holt* that the prison system has the burdens of production and persuasion on the compelling-interest and least-restrictive-means defenses. The Act "requires the [prison] not merely to explain why it denied the exemption but to prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest." 135 S. Ct. at 864. Wisconsin has not offered any evidence to show that no USDA-inspected game meats are available— and the fact that venison is widely sold in supermarkets and served in restaurants shows that it can be safe for human consumption. It is difficult for us to believe that Wisconsin would be unable to find game meats that could be served without danger to the prisoners; certainly we cannot indulge such an assumption on an empty record.

Wisconsin fears that every prisoner would demand a religious diet that requires daily, person-specific preparation so expensive that in the aggregate the costs of compliance would be crippling and the need to avoid them "compelling." But it has not tried to estimate what it would cost to honor Schlemm's request; expense may be negligible if he finds a vendor to provide a sealed platter of food acceptable for the Ghost Feast. The prison's willingness to allow external platters for Passover and sweat lodges makes it hard to credit an argument that any culinary accommodation will bring the prison's administration to its knees. If the Church of the New Song makes a comeback (its sacraments were

said to be chateaubriand and sherry), officials might have good reason to question the sincerity of these beliefs. See, e.g., *Goff v. Graves*, 362 F.3d 543 (8th Cir. 2004). But they do not question the sincerity of Schlemm's. On this record the cost of accommodating Navajo inmates appears to be slight, and the costs of accommodating other inmates' requests (should any be made) can be left to future litigation.

Schlemm exhausted his administrative remedies on a second request for accommodation. He wants to wear a multi-colored headband or bandana while praying or meditating in his cell and during group religious ceremonies such as the sweat lodge. The prison allows solid white and solid black religious headgear, but not any other color. The district judge assumed that the prison's rules impose a substantial burden on Schlemm's religious practices but concluded that the prison's restrictions are the least restrictive means to achieve its compelling interest in preventing gang members from identifying themselves. 2014 U.S. Dist. LEXIS 78601 at *36–39. Before the Act's adoption, we sustained a prison's ban on colored headgear. *Young v. Lane*, 922 F.2d 370, 376 (7th Cir. 1991). The district judge thought that curtailing gang identification remains a compelling interest.

Once again we conclude that Wisconsin is not entitled to summary judgment. It has asserted a need to suppress gang identifications but has not offered evidence that Schlemm's proposed accommodation would undermine that interest. The prison system does not contend that any given gang's members are unaware of which other prisoners belong to the same gang. The ban on colored headwear apparently is designed to reduce any gang's adherents' ability to advertise their status to non-members. We say "reduce" rather than

"eliminate," because Wisconsin does not compel inmates to remove gang-related tattoos and has only limited ability to police a ban on gang-related speech and hand signals. Because gang information may be widely available already, it is difficult to depict as "compelling" a desire to cut out one potential means of identification.

More than that: Schlemm's headband is not a plausible means of signaling gang membership, because he has offered to limit its use to his cell (where few other inmates will see it) or group religious ceremonies and to wear only colors not associated with any gang in the prison. He asserts, without contradiction from defendants, that red is the only gang-signifying color at the prison where he is currently confined. He proposes to wear a headband with earth tones (such as blues and greens) that no one would understand as gang-related. On this record, we must accept Schlemm's submissions, which if true show that the prison does not have *any* interest, let alone a compelling one, in forbidding a headband that carries religious significance. The prison's position is slightly better with respect to group ceremonies than with respect to in-cell use, but as long as the headband is free of any gang significations it is hard to see a "compelling" need to prohibit its use.

Wisconsin may be able to produce better evidence at a trial or undermine Schlemm's evidentiary submissions. Because resolving his claims may require evidence that a prisoner will find it hard to obtain and present, the district court should seriously consider recruiting counsel to assist Schlemm. See *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc). And pending the final resolution of this litigation, the court should issue a preliminary injunction entitling

Schlemm to wear a headband in his cell and during religious ceremonies (provided that the headband does not contain any red), and have a supply of venison for the Ghost Feast.

The judgment is affirmed to the extent it rejects some claims as unexhausted and entitles two of the defendants to dismissal because they were not involved in the contested decisions. Otherwise the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.