*Williams v. Annucci*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2017

ARGUED: OCTOBER 11, 2017
DECIDED: JULY 10, 2018

No. 15-1018

DEANDRE WILLIAMS, A/K/A DAVID WILLIAMS,
*Plaintiff-Appellant,*

*v.*

ANTHONY J. ANNUCCI, Commissioner of NYS Department of
Corrections and Community Supervision, CHERYL V. MORRIS,
Director, Ministerial, Family and Volunteer Services, NYS
Department of Corrections and Community Supervision, OMEGA
ALSTON, Assistant Director, Ministerial, Family and Volunteer
Services, Department of Corrections and Community
Supervision, D. ROCK, Superintendent, Upstate Correctional Facility,
M. LIRA, Deputy Superintendent, Upstate Correctional Facility,
TIMOTHY C. HAWK, Chaplain, Upstate Correctional Facility, a/k/a J.
HAWK, DON HAUG, Food Administrator, Upstate
Correctional Facility, KAREN BELLAMY, Director, Inmate Grievance
Program, NYS Department of Corrections and Community
Supervision, KENNETH S. PERLMAN, Deputy Commissioner, Program
Services, NYS Department of Correctional Services, ALEC
FRIEDMANN, Jewish Chaplain, Upstate Correctional Facility,

*Defendants-Appellees.*[1]

————

Appeal from the United States District Court
for the Northern District of New York.
No. 11 Civ. 379 – Norman A. Mordue, *Judge*, Therese Wiley Dancks,
*Magistrate Judge.*

————

Before: WALKER, POOLER, *Circuit Judges*, and CRAWFORD, *District Judge*.[2]

————

Plaintiff-Appellant DeAndre Williams appeals from a memorandum and order of the United States District Court for the Northern District of New York (Mordue, *J.*). The district court, adopting the recommendation of the magistrate judge (Dancks, *M.J.*), granted summary judgment to the defendants, various officials of the New York State Department of Corrections and Community Supervision ("DOC"), on Williams's claim that the DOC's policy of not accommodating the dietary restrictions imposed by his Nazarite Jewish faith violated the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). The district court, adopting the reasoning of the magistrate judge, denied Williams's request for a

---

[1] The Clerk of the Court is directed to amend the caption as set forth above.

[2] Judge Geoffrey W. Crawford, of the United States District Court for the District of Vermont, sitting by designation.

permanent injunction because it found that, assuming Williams's beliefs were "sincerely held" and "substantially burdened" by the DOC's policy, the DOC's refusal to modify the menu for Williams furthered a compelling state interest in minimizing costs and administrative burdens, and the DOC's policy constituted the least restrictive means of furthering those interests. Special App'x 45–47.

We conclude that the district court erred in granting summary judgment to the DOC because, in the wake of the Supreme Court's decision in *Holt v. Hobbs*, 135 S. Ct. 853 (2015), it failed to appreciate the substantial showing that the government must make to justify burdening an individual plaintiff's practice of a sincerely held religious belief. We therefore VACATE the district court's grant of summary judgment on Williams's claim for injunctive relief under RLUIPA, and REMAND for further proceedings consistent with this opinion. The DOC's motion to vacate the judgment and remand is DENIED as moot.

————

RAJEEV MUTTREJA, (Meir Feder, Lauren Pardee Ruben, *on the brief*), Jones Day, New York, NY, *for Plaintiff-Appellant*.

ZAINAB A. CHAUDHRY (Andrew D. Bing, Barbara D. Underwood, *on the brief*), for Barbara D. Underwood, Attorney General of the State of New York, New York, NY, *for Defendants-Appellees*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff-Appellant DeAndre Williams appeals from a memorandum and order of the United States District Court for the Northern District of New York (Mordue, *J.*). The district court, adopting the recommendation of the magistrate judge (Dancks, *M.J.*), granted summary judgment to the defendants, various officials of the New York State Department of Corrections ("DOC"), on Williams's claim that the DOC's policy of not accommodating the dietary restrictions imposed by his Nazarite Jewish faith violated the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). The district court, adopting the reasoning of the magistrate judge, denied Williams's request for a permanent injunction because it found that, assuming Williams's beliefs were "sincerely held" and "substantially burdened" by the DOC's policy, the DOC's refusal to modify the menu for Williams furthered a compelling state interest in minimizing costs and administrative burdens, and the DOC's policy constituted the least restrictive means of furthering those interests. Special App'x 45–47.

We conclude that the district court erred in granting summary judgment to the DOC because it failed to appreciate, in the wake of the Supreme Court's decision in *Holt v. Hobbs*, 135 S. Ct. 853 (2015),

the substantial showing that the government must make to justify burdening an individual plaintiff's practice of a sincerely held religious belief. We therefore VACATE the district court's grant of summary judgment on Williams's claim for injunctive relief under RLUIPA, and REMAND for further proceedings consistent with this opinion. The DOC's motion to vacate the judgment and remand is DENIED as moot.

## BACKGROUND

Plaintiff-Appellant DeAndre Williams is a practicing Nazarite Jew and a prisoner of the New York State DOC. As part of his faith, Williams believes he must consume a grape-free, egg-free, vegetarian diet that is also kosher. Williams also has a dairy intolerance.

At the time this appeal was filed, the DOC prepared meals for inmates in two steps: first, it processed food at a central production center; then, it shipped that food to each prison facility where meals were prepared and served to inmates. The DOC makes two different menus available to prisoners: the general confinement menu ("GCM"), and the Cold Alternative Diet ("CAD"). The GCM meals, which are not certified kosher, include an entrée, side dishes, and a beverage. Many items on this menu include meat, dairy, or grapes. The DOC also typically offers an alternative entrée that does not contain meat, but that may contain dairy or grape products. The CAD

menu, on the other hand, provides kosher food, but it includes meat, dairy, and grapes.

The DOC allows inmates to submit requests to substitute food for medical reasons, which the DOC then reviews on a case-by-case basis. The DOC generally does not permit substitutions for religious reasons. Instead, the DOC's policy is to advise inmates to "refrain from eating those food items which are contrary to [their] religious beliefs." App'x 250.

The DOC accommodates Williams's dairy allergy, but often in ways that conflict with his religion's requirements. For example, the DOC frequently replaces Williams's cream cheese with grape jelly or his cheese with meat. As a result, Williams cannot eat much of the food the DOC offers him. His diet is largely confined to hot cereal, bread, fruit, vegetables, soup, and peanut butter. Sometimes he tries to trade the food he cannot eat with other inmates, even though trading food is discouraged.

Since 2002, Williams has filed multiple grievances based on the DOC's refusal to accommodate his religiously required diet. Over the years, he has asked for a variety of accommodations, including transferring him to a facility that serves full kosher meals, providing him with a kosher vegetarian meal that does not include grapes, replacing the items he cannot eat with other items on the CAD, or

removing the items he cannot eat from his tray.[3] These requests were denied in accordance with the DOC's policy regarding religious diets.

In April 2011, Williams, acting *pro se*, brought this action. Williams alleged that the DOC violated his rights under the First Amendment and RLUIPA by refusing to accommodate his religious dietary restrictions, and he sought an injunction ordering the DOC to provide him with the meals his religion required. The district court denied Williams's motion for a preliminary injunction in March 2012, but denied the DOC's motion to dismiss the following February.

In May 2014, the DOC moved for summary judgment, arguing that it had a compelling interest in controlling costs and avoiding administrative burdens. By way of support, the DOC proffered a sworn declaration from Robert Schattinger, the DOC's Director of Correctional Food and Nutritional Services. Schattinger claimed that the DOC's experience with a kosher food line at its Green Haven facility had taught it that running such a program is "extremely expensive and administratively burdensome" and that such a service "[could] not be provided" statewide. App'x 392. The declaration stated that "maintaining the integrity of kosher [food] at the facility level is problematic." *Id.* To make kosher meals available to inmates

---

[3] To Williams, it is important that an item he cannot eat be removed from his tray because if it seeps onto other acceptable items it contaminates them.

statewide, Schattinger anticipated that the DOC would have to prepare meals at a kosher site, seal them, and ship them to each facility, which would require purchasing new equipment and hiring more staff. Additionally, Schattinger anticipated that extra time and energy would be required to figure out how to provide inmates adequate nutrition in a menu without meat. Due to these "fiscal and practical considerations," Schattinger declared, "the Department has determined that a [kosher vegetarian] menu will not be provided," since doing so is "not financially or administratively feasible." App'x 392–93.

The district court assigned the motion for summary judgment to a magistrate judge. The magistrate judge determined that there was no dispute that Williams's religious beliefs were "sincerely held" and that those beliefs were "substantially burdened" by the DOC's policy. Special App'x 45–47. Nevertheless, the magistrate judge found that the DOC's refusal to modify the menu for Williams furthered a compelling state interest in minimizing costs and administrative burdens and was the least restrictive way of furthering those interests. The magistrate judge thus recommended that the district court grant summary judgment to the DOC. Shortly before the district court decided the motion, the Supreme Court handed down *Holt v. Hobbs*, 135 S. Ct. 853 (2015), clarifying the standard applicable to RLUIPA claims. The district court adopted the magistrate's recommendation

and entered summary judgment for the DOC without considering *Holt*. Williams timely appealed.

After the district court granted summary judgment, the DOC reported that it had made significant changes to its kosher meal program. In fact, the day after the DOC's brief was due in this appeal, the facility where Williams was then housed adopted a new kosher menu. The new menu is a largely vegetarian diet, with meat served twice per week and eggs once per week. The new meals are prepared at a kosher facility and prepackaged with a clear plastic lid and double-wrapping. That packaging gives the DOC greater capability to make kosher-compliant substitutions on a case-by-case basis. Williams, however, was transferred to a facility that does not participate in the new menu program. Regardless, even this new menu includes items he cannot eat, and he has said that he will not elect to adopt it.

In November 2015, we appointed *pro bono* counsel for Williams to brief the issue of "whether summary judgment was warranted on Appellant's claim for injunctive relief (a nutritionally adequate diet compliant with his religious beliefs) under the Religious Land Use and Institutionalized Persons Act." Mot. Order, *Williams v. Fischer*, No. 15-1018 (2d Cir. Nov. 4, 2015), ECF No. 55.

**DISCUSSION**

Williams argues on appeal that the district court erred in granting summary judgment to the DOC because the district court misunderstood, post-*Holt*, the extent to which the DOC's evidence of a compelling interest and least restrictive alternatives must be particularized to adequately respond to Williams's specific request for accommodations.

"We review a grant of summary judgment *de novo*, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Sheppard v. Beerman*, 317 F.3d 351, 354 (2d Cir. 2003). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and emphasis omitted).

## I.   Availability of a Permanent Injunction

The district court construed Williams's complaint as seeking a permanent mandatory injunction, but concluded that there was no defendant against whom effective injunctive relief could be awarded under RLUIPA. As the DOC concedes, this was an error.

Williams sued Brian Fischer, the Commissioner of the DOC, in his official capacity. Before the district court ruled on Williams's motion for summary judgment, Fischer retired, and Williams did not separately sue his successor.

Fischer's retirement had no effect on Williams's ability to obtain injunctive relief. It is settled that "suits against officers in their official capacity . . . are directed at the office itself." *Tanvir v. Tanzin*, No. 16-1176, 2018 WL 3096962, at *7 n.7 (2d Cir. June 25, 2018) (as amended) (citing Fed. R. Civ. P. 17(d)). So, when a "defendant in an official capacity suit leaves office, the successor to the office replaces the originally named defendant." *Id.*; *see also* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Once Fischer retired, his successor, Acting Commissioner Anthony Annucci, was "automatically substituted" as a defendant. Fed. R. Civ. P. 25(d). And it is Annucci who has the power to order that Williams be accommodated. *See* N.Y. Correct. Law § 112(1).

**II.    The Effect of Changes in DOC Policy**

Next, we must decide what effect, if any, the recent changes to the DOC's dietary policy have on Williams's appeal. The DOC suggests that in light of these changes this case might be moot under RLUIPA's safe harbor provision or otherwise.

"In order for a federal court to retain jurisdiction over a case, an actual controversy must exist at all stages of review, not merely at the time the complaint is filed." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam) (internal quotation marks omitted). "A case is deemed moot where the problem sought to be remedied has ceased, and where there is no reasonable expectation that the wrong will be repeated." *Id.* (internal quotation marks omitted). "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chevron Corp. v. Donziger*, 833 F.3d 74, 124 (2d Cir. 2016) (internal quotation marks and emphasis omitted). RLUIPA encourages institutions to accommodate inmate requests by exempting from liability institutions that change challenged policies, exempt substantially burdened inmates, or take "any other means that eliminates the substantial burden." 42 U.S.C. § 2000cc-3(e).

First, the DOC argues that the mootness point is better resolved by the district court. The DOC relies on *Lumbermens Mutual Casualty Co. v. RGIS Inventory Specialists, LLC*, 356 F. App'x 452, 453–54 (2d Cir. 2009), a case in which we remanded to the district court to determine whether the action was mooted by a settlement in another case because "the question of mootness is, at least in part, factual" and "dependent . . . on the terms and circumstances of the settlement." *Id.* at 454. That case is distinguishable. Here, the facts pertaining to

mootness are uncontested: the DOC has not agreed to provide Williams with his requested diet; the new menu, like the old menu, includes items that Williams cannot eat; and the new kosher menu is not available where Williams is currently incarcerated. No additional factfinding is required.

In a variation of its mootness argument, the DOC argues that we should remand without addressing the merits so the district court can consider the new record in the first instance. The DOC's reliance on *Farmer v. Brennan*, 511 U.S. 825, 846–48 (1994), for this point is misplaced, however, because there the Supreme Court clarified the Eighth Amendment standard before remanding for the district court to apply it. *See id.* In the "interest[] of judicial economy," we opt to do the same with regard to Williams's RLUIPA claim. *Florez v. Cent. Intelligence Agency*, 829 F.3d 178, 189 (2d Cir. 2016).[4]

---

[4] The DOC has also asked us to invoke our inherent authority to "vacate, set aside or reverse any judgment, decree, or order of a court" under 28 U.S.C. § 2106 and employ our so-called *Jacobson* remand procedure by remanding the case to the district court to "consider arguments" and "weigh relevant evidence . . . in the first instance" while keeping the appeal. *Florez*, 829 F.3d at 189; *see also United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir. 1994). Because we conclude that there are independent reasons for remanding to the district court, we do not separately address this issue. On remand, as discussed further in Section III, *infra*, the district court should consider the DOC's ability to accommodate Williams in light of the recent changes to DOC policy. *See Farmer*, 511 U.S. at 846–48 (clarifying applicable standard before remanding for the district court to apply it with reference to the updated factual record).

## III.    RLUIPA Claim

RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). In practice, RLUIPA claims are evaluated under a burden-shifting framework whereby a plaintiff must first demonstrate that the state has imposed a substantial burden on the exercise of her religion; the burden then shifts to the state to demonstrate "that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010).

The district court agreed with Williams that his religious exercise had been substantially burdened by the DOC's policy of not providing him with religious dietary accommodations, but determined that the DOC had "met the burden of showing that for financial and administrative reasons" the DOC had a compelling state interest in limiting menu options. Special App'x 56. Williams argues that the DOC's compelling interest showing was inadequate particularly in the wake of *Holt*.

In *Holt*, the Supreme Court considered a Muslim inmate's RLUIPA challenge to an Arkansas Department of Correction policy that prohibited him from growing a half-inch beard. *See* 135 S. Ct. at 859. The department justified its policy by asserting compelling interests in (1) stopping the flow of contraband, and (2) facilitating prisoner identification. *See id.* The department's staff testified to these concerns, but was unable to point to any actual problems that beards had caused. *See id.* at 861. One official acknowledged that prisoners could also hide contraband in clothing or the hair on their heads and could not explain why taking photos of inmates without a beard would not address the identification concern. *See id.* That official also testified that keeping track of exempt inmates' beard length would be difficult, but he could not offer any reason why doing so would be any more difficult than tracking the beard length of those with medical exemptions, something the department already did. *See id.* Even so, the district court held that the department had sufficiently shown that banning half-inch beards was the least restrictive means of furthering its compelling interest in security. *See id.* The Eighth Circuit affirmed. *Id.*

The Supreme Court reversed, holding that the department's evidence did not discharge its burden to show that it had a compelling interest in burdening Holt. *Id.* at 863–67. The Court's reasoning is helpful guidance in applying RLUIPA to Williams's case.

First, *Holt* made it plain that courts need not accept the government's claim that its interest is compelling on its face. *See id.* at 864, 866. The Court held that the district court erred in thinking that it was required to defer to the government's assertion that inmates could hide contraband in their beards, a claim that even the magistrate judge had remarked was "almost preposterous." *Id.* at 861, 863–64. The Court acknowledged that courts should respect prison officials' expertise in "evaluating the likely effects of altering prison rules." *Id.* at 864. But because Congress passed RLUIPA "to provide very broad protection for religious liberty," courts abdicate their responsibility to "apply RLUIPA's rigorous standard" by deferring to the government's "mere say-so" without question. *Id.* at 859, 864, 866.

Second, evidence of a policy's underinclusiveness relative to "analogous nonreligious conduct" may cast doubt on both whether the government's asserted interest is compelling and whether that policy actually is the least restrictive means of furthering that interest. *See id.* at 866 (internal quotation marks omitted). In *Holt,* the Court observed that the department insisted that it needed inmates to shave their beards to stop the spread of contraband and to quickly identify prisoners, but did not require them to go "bald, barefoot, or naked," which suggested a tailoring problem—namely, that "those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree." *Id.* (internal quotation marks omitted); *accord*

*United States v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1341, 1349 (11th Cir. 2016) (noting that the lack of explanation for why the government offered special, nonreligious diets at similar costs, but not kosher meals, suggested a less burdensome policy was possible). This observation was consistent with previous cases in which the Court had found that a policy's underinclusiveness suggests that the proffered interest is not quite as compelling as the government claims. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) ("[A] law cannot be regarded as protecting [a compelling interest] when it leaves appreciable damage to that supposedly vital interest unprohibited." (internal quotation marks and alteration omitted)); *accord Yellowbear v. Lampert*, 741 F.3d 48, 60 (10th Cir. 2014) (in which then–Circuit Judge Gorsuch wrote that "[a] law's underinclusiveness—its failure to cover significant tracts of conduct implicating the law's animating and putatively compelling interest— can raise with it the inference that the government's claimed interest isn't actually so compelling after all").

Third, the government's compelling interest must be defined at an appropriately reduced level of generality—that is, the government must justify its conduct by demonstrating not just its general interest, but its particularized interest in burdening the individual plaintiff in the precise way it has chosen. *See Holt*, 135 S. Ct. at 863. The Court in *Holt* rejected the government's "broadly formulated" interest in

prison safety and security and insisted instead that the government "demonstrate that the compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* (internal quotation marks and alterations omitted). While the Court agreed that the government had a compelling interest in "staunching the flow of contraband into and within its facilities," the Court rejected the government's argument that "this interest would be seriously compromised by allowing an inmate to grow a ½–inch beard." *Id.*

With these principles in mind, we consider Williams's challenge to the DOC's dietary policy.

**A. The Government's Interest**

In the district court, the DOC justified its refusal to accommodate Williams's dietary requirements by citing its compelling interest in controlling costs and avoiding administrative burdens. Neither party disputes that the DOC generally has a compelling interest in controlling costs and avoiding administrative burdens—or as another circuit has put it, an interest in "cost-efficient food service." *See Curry v. Cal. Dep't of Corr. & Rehab.*, 616 F. App'x 265, 266 (9th Cir. 2015). What the parties do dispute is the specificity with which the DOC is required to make such a showing.

We first observe that the government's interest in reducing costs is less compelling in the RLUIPA context than it is elsewhere. That is because RLUIPA explicitly states that complying with its terms "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise," codifying a congressional preference that prisons incur additional costs to accommodate inmates' free exercise rights. 42 U.S.C. § 2000cc-3(c).

Even before *Holt*, our circuit insisted that the government's proffered interests be particularized. For instance, in *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006), an inmate challenged the prison's joint Ramadan services for Sunnis and Shi'ites. The prison argued that the burden to the Sunni plaintiff of having to attend a joint service was outweighed by the prison's legitimate penological concerns regarding "security, as well as fiscal, space, and staffing limitations," but did not point to any evidence in the record to support those claims. *Id.* at 270, 275. We vacated the grant of summary judgment to the defendants, reasoning that this court cannot "manufacture facts out of thin air" and that "it is the defendants' duty on summary judgment to cite record evidence" to establish that its interest is compelling. *Id.* at 275. In contrast, in *Jova v. Smith*, 582 F.3d 410 (2d Cir. 2009) (per curiam), we held that the government had sufficiently justified certain dietary restrictions it imposed on a

practicing Tulukeesh inmate who required a "complex, highly regimented non-soybean-based vegan diet" only after the government submitted "voluminous affidavits and exhibits" documenting the burdens of accommodation. *Id.* at 414–16. In doing so, we made clear that "the state may not merely reference an interest . . . to justify its actions"; "rather, the particular policy must further this interest, and must be more than conclusory." *Id.* at 415 (internal citation and quotation marks omitted).

The DOC, citing to pre-*Holt* cases, argues that the district court correctly concluded that by proffering Schattinger's declaration it met its burden to show that it had a compelling interest in cost-efficient food service. We disagree.

At the most, the DOC's cases and others show that courts have found a compelling government interest in reducing costs where the government submitted detailed affidavits that showed that adopting the requested dietary restriction would significantly increase costs and administrative burdens. *See, e.g.*, *Curry*, 616 F. App'x at 266, *aff'g* 2013 WL 75769, at *4, *9 (N.D. Cal. Jan. 4, 2013) (affirming grant of summary judgment where the record included specific evidence calculating the costs of accommodating the inmate's restrictions to be thirty times more than the regular cost of feeding a prisoner and showing that the closest store where appropriate food could be purchased was 35 miles away). *But see Moussazadeh v. Tex. Dep't of*

*Criminal Justice,* 703 F.3d 781, 795–96 (5th Cir. 2012) (remanding for further factfinding as to whether there was a compelling interest in cost savings in denying kosher meals where there was evidence in the record that providing kosher meals to all observant prisoners would cost around $88,000 a year, causing the court to be "skeptical that saving less than .05% of the food budget constitutes a compelling interest").

The DOC has not shown on the present record that accommodating Williams would significantly increase costs and administrative burdens. The record, unlike the one in *Jova*, is not replete with "voluminous affidavits and exhibits," 582 F.3d at 414–16, but instead includes only one declaration that claims, in a conclusory manner, that "[d]ue to fiscal and practical considerations . . . the Department has determined that a [kosher vegetarian] menu will not be provided"; that "[d]esignating and providing a new kosher vegetarian food line would bring . . . challenges"; and that providing the food would be "exceedingly burdensome to existing staff and facility resources" so it "is not financially or administratively feasible." App'x 392–93. The DOC has not said precisely how much these changes would cost or the amount of that cost relative to the overall cost of feeding inmates. Nor has it shown the added cost, if any, of accommodating Williams's alternative suggestions, such as not placing foods he cannot eat on his tray or giving him more of

certain foods the DOC already prepares. The DOC's showing of what seems to be its "marginal interest" in cost-efficiency as to Williams falls short of meeting its justification burden. *Holt*, 135 S. Ct. at 863.

As was the case in *Holt*, the DOC's policy is underinclusive because the DOC accommodates comparable medical dietary restrictions. Such unexplained disparate treatment of "analogous nonreligious conduct" leads us to question whether the DOC's interest in cost-efficiency is as compelling as it suggests given that there is no evidence that these medical accommodations have increased costs significantly or impaired efficiency. *See Church of the Lukumi Babalu Aye*, 508 U.S. at 546–47. Of course, the DOC might have a reasonable explanation for this evident underinclusiveness, but, to date, it has not offered one. *See Knight v. Thompson*, 797 F.3d 934, 944–45 (11th Cir. 2015).

Even if the DOC's evidence were more detailed, it still might be inappropriate to accept its word that Williams's accommodations would be cost inefficient. *See Holt*, 135 S. Ct. at 866. The fact that the DOC continues to operate a kosher meal facility at Green Haven and has since reformed its system by providing prepackaged kosher meals casts considerable doubt on the DOC's claim that providing kosher vegetarian food to Williams is too expensive and administratively burdensome. Indeed, it appears that the systems are now in place that Schattinger anticipated would be too costly to

build—namely, systems for preparing food off site, individually sealing it, and then reheating it on site. Taking the DOC at its word under such circumstances would involve "a degree of deference that is tantamount to unquestioning acceptance." *Id.* at 864.[5]

To the extent that the DOC's argument is that Williams's request is administratively burdensome because it would lead to more requests for accommodation from inmates, it is the "classic rejoinder of bureaucrats throughout history" rejected by the Supreme Court in *Holt. Id.* at 866 (internal quotation marks omitted). In fact, narrowing the pool of potential accommodations is what the sincerity requirement accomplishes: it ensures that accommodations are only available to the few who sincerely hold protected beliefs. *Id.* at 866–67 (noting that if prison officials suspect inmates are using accommodations in bad faith "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic"); *see also Fla. Dep't of Corr.,*

---

[5] This is not to say that we would hold against a prison the efforts that it makes to accommodate inmates. In fact, RLUIPA provides a safe harbor for prisons that remediate infringing policies. *See* 42 U.S.C. § 2000cc-3(e). But where a facility has demonstrated a capability to accommodate inmates but chooses not to do so, we are well within bounds to consider that capability when determining how burdensome accommodating the plaintiff would actually be. *See Sec'y, Fla. Dep't of Corr.,* 828 F.3d at 1347–48 (considering fact that department had previously provided kosher meals statewide relevant to whether current policy denying kosher food furthered state's compelling interest in cost containment).

828 F.3d at 1349 (rejecting argument that cutting statewide kosher food service furthered state's compelling interest in cost containment where record included evidence that the department was not enforcing the rules of participation or screening out insincere applicants).

In sum, we conclude that the DOC failed to meet its burden of showing with particularity that it had a compelling interest in not accommodating Williams.

**B. Least Restrictive Means**

The government has also failed to show that its policy of not accommodating Williams is the least restrictive means of achieving its stated goal of running a cost-efficient food service program.

"The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 135 S. Ct. at 864 (internal quotation marks and alterations omitted). "If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.* (internal alteration omitted). Whether a proffered alternative is the least restrictive means is a fact-intensive inquiry. *See Jova*, 582 F.3d at 417 (remanding because further factfinding was required to determine whether the chosen policy was

the least restrictive means); *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 117 (3d Cir. 2017).

To establish that its chosen policy is the least restrictive means, the DOC must prove that each of the inmate's proffered alternatives is too burdensome. *See Holt*, 135 S. Ct. at 864–65 (holding that defendants "fail[ed] to prove that [inmate's] proposed alternatives would not sufficiently serve its . . . interests"). For example, in *Jova*, the Tulukeesh-inmate plaintiff challenged the government's refusal to provide him specific foods, on particular days, prepared only by Tulukeesh adherents. 582 F.3d at 417. Although we held that the government was not required under RLUIPA to grant the defendant's full dietary request, we remanded because "there [was] no indication that the Defendants discussed, let alone demonstrated, why they [could not] provide an entirely vegetarian menu to inmates who request it" and therefore they "did not demonstrate that the religious/meatless alternative menu was the least restrictive means of furthering their compelling administrative interests." *Id*.

To show that the chosen policy is the least restrictive means of furthering the government's compelling interest, the government must again account for a policy's underinclusiveness. *See Holt*, 135 S. Ct. at 864–66. For example, in *Holt*, the government failed to show that its policy preventing inmates from growing a half-inch beard was the least restrictive means where it already searched the quarter-inch

beards of inmates with dermatological conditions and "[i]t ha[d] offered no sound reason why hair, clothing, and ¼–inch beards can be searched but ½–inch beards cannot." *Id.* at 864; *see also Knight*, 797 F.3d at 944–45, 947 (upholding district court's judgment for the department in case challenging department's policy requiring only male inmates to have short hair where department introduced evidence of specific incidents where male, but not female, inmates had used long hair to conceal contraband and infections, cut hair to conceal identity, and grabbed hair during fights).

The DOC here has not made this difficult showing. First, the policy's underinclusiveness suggests, as it did in *Holt*, that a more tailored policy, less burdensome to Williams, is possible. 135 S. Ct. at 866. Specifically, the DOC has not explained how the religious exception Williams has asked for (swapping out religiously forbidden foods) is any more administratively burdensome than the medical exception he already receives (swapping out allergy-producing foods). Such unexplained disparate treatment of "analogous nonreligious conduct" leads us to suspect that a narrower policy that burdens Williams to a lesser degree is in fact possible. *See id.*

Second, the DOC has not shown that Williams's proposed alternatives are not viable. *See id.* at 864–65. Construing Williams's *pro se* district court submissions liberally, as we must, *Triestman*, 470 F.3d at 474, he has identified three ways the DOC could accommodate him,

each of which is potentially less restrictive than its current policy: the DOC could (1) serve Williams a kosher vegetarian meal—whether by establishing a kosher vegetarian line at the facility level or shipping in prepackaged kosher food; (2) provide Williams with a modified version of the CAD menu, replacing items Williams cannot eat with high-protein foods or with other CAD items; or (3) refrain from putting forbidden foods on Williams's tray. Like the department in *Jova*, the DOC here did not discuss, much less demonstrate, why it could not, at least, give Williams more of the acceptable food it already prepares or stop serving him foods he cannot eat. *See* 582 F.3d at 417. Moreover, it seems that Williams's request that he be served a full kosher vegetarian meal could be no more than minimally burdensome given the DOC's new ability to make kosher-compliant substitutions. Just how restrictive these alternatives are, however, is a fact question that is better left for the district court to consider in the first instance. *See id.*

For these reasons, the DOC has not satisfied its burden under RLUIPA, and the district court erred in granting it summary judgment. Because fact questions remain as to whether the DOC's interest is compelling and its means are the least restrictive, in light of Williams's suggested alternatives, we remand for further factfinding. *See id.*

We would be remiss not to express our disappointment with the DOC's approach to litigating this case. It has been seven years since Williams initially filed his complaint. During that time, the record indicates that every day, three meals a day, Williams has been forced to cobble together sufficient food to eat while adhering to his protected religious diet. Meanwhile, the DOC failed to file a brief that grappled with Williams's argument about how *Holt* impacted the RLUIPA analysis, thereby prolonging this case. In situations like this, we would have to be naïve to overlook that it is in the government's interest to wage a war of attrition that draws out judicial proceedings until the plaintiff-inmate is released and the case is mooted. Now that the applicable standard has been clarified, we look forward to a speedy resolution of this dispute.

**CONCLUSION**

We therefore VACATE the district court's grant of summary judgment on Williams's claim for injunctive relief, and REMAND for further proceedings consistent with this opinion. The DOC's motion to vacate judgment and remand is DENIED as moot.