NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2019[*]
Decided February 11, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-3110

| | |
|---|---|
| DAVID SCHLEMM, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 11-cv-272-wmc |
| KEVIN CARR, *Defendant-Appellee.* | William M. Conley, *Judge.* |

**O R D E R**

David Schlemm, a Native American inmate, sued the Wisconsin Department of Corrections and prison officials for interfering with his religious practices. The district court entered summary judgment for the defendants, but we remanded his case for trial. *See Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2015). After a bench trial, the district court entered an injunction requiring the Department to honor several of Schlemm's

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C). Additionally, Kevin Carr, who became the secretary of the Wisconsin Department of Corrections after this appeal was filed, has been substituted for Jon Litscher as the appellee. *See* FED. R. APP. P. 43(c)(2).

requests. On appeal again, Schlemm primarily asserts that the injunction is insufficient; specifically, it does not permit him to obtain fresh game meat to make "Indian Tacos" for the traditional Ghost Feast. Because the record shows that this limitation does not impose a substantial burden on Schlemm's religious exercise and is the least restrictive means of furthering the prison's security interest, we affirm the judgment.

Schlemm contends that, before this litigation began, officials at the Green Bay Correctional Institution and the Wisconsin Department of Corrections violated his religious liberty in a number of ways, two of which are relevant to this appeal: they forbade him from wearing a multicolored headband in his cell and while participating in Native American spiritual activities, and they did not allow him to meaningfully participate in a Native American harvest celebration called the Ghost Feast. In 2011 Schlemm sued Department of Corrections and prison officials under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc–5, and under 42 U.S.C. § 1983 for violating the First and Fifth Amendments. The district court dismissed Schlemm's due-process claim—which accused the Department of Corrections of amending its policies without following the state's administrative rulemaking process and circumventing legislative oversight—and entered summary judgment on Schlemm's First Amendment claim, because the individual defendants were not personally involved in any deprivation of Schlemm's constitutional rights. It also entered summary judgment on his RLUIPA claims because Schlemm failed to establish that the challenged policies imposed a "substantial burden" on his religious practices.

We vacated the district court's judgment on Schlemm's claims under the Act. *Schlemm*, 784 F.3d at 367. (We bypassed Schlemm's First Amendment arguments because the Act provides greater protections. *Id.* at 363.) We noted that, although "Schlemm would lose" under this circuit's prior case law, two recent Supreme Court decisions, *Holt v. Hobbs*, 135 S. Ct. 853 (2015), and *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), instructed that the RLUIPA standard was "much easier to satisfy" than this circuit previously held. *Schlemm*, 784 F.3d at 364. We also recommended that the district court recruit counsel to assist Schlemm and directed it to enter a preliminary injunction. *Id.* at 366. (We affirmed the court's judgment "to the extent it reject[ed] some claims as unexhausted and entitles two of the defendants to dismissal because they were not involved in the contested decisions." *Id.* at 366–67.)

On remand, the district court entered a preliminary injunction and recruited counsel for Schlemm. The court instructed Schlemm to work with his attorneys and advised him that, if he did not want their assistance, the court was "unlikely" to

appoint new representation. Schlemm later had differences with the attorneys; the district court granted their motion to withdraw and then, as foreshadowed, denied Schlemm's motion for new counsel. Therefore, Schlemm had counsel through the summary-judgment stage, but not at trial.

Schlemm elected a bench trial and proceeded pro se. The prison agreed before trial to allow Schlemm to wear the desired multicolored headband in his cell and during religious ceremonies, so the trial focused on Schlemm's claim regarding his inability to obtain fresh game meat and frybread for the Ghost Feast. At trial, Schlemm testified that "processed" meats treated with chemical preservatives were inadequate because he did not view those products as "traditional" and because he "can't cook it." The district judge asked if "there [is] something that you [can] point to in the materials provided by your expert or in the literature that suggests that it's not an adequate Ghost Feast if the food, particularly the game meat, is not fresh and able to be cooked or that it needs to be cooked at the time." Schlemm answered that he could not.

After trial, the judge concluded that the Department was violating Schlemm's rights under the Act and entered an injunction. First, the district court "had no trouble concluding" that Schlemm's request for game meat and frybread at the Ghost Feast was motivated by a sincerely held religious belief and that each is a necessary component of the Feast. Second, the court concluded that the Department's current policies—they had been revised several times while this case proceeded—still imposed a substantial burden on Schlemm's religious exercise for three reasons. First, they arbitrarily limited to 16 ounces the amount of each food at a religious meal no matter how many participants there were. (Food for religious ceremonies is brought into the prison by spiritual advisors or other volunteers.) Second, they prohibited inmates from ordering more than one food item, even though several types of food are required for a Ghost Feast. Finally, by allowing inmates to use only shelf-stable foods for religious observances, they effectively prohibited the use of frybread.

The district court, however, rejected Schlemm's argument that barring outside vendors, such as restaurants or caterers, from delivering *fresh* game meat into the prison imposes a substantial burden on Schlemm's religious exercise. For support, the court pointed to testimony from Schlemm's witnesses suggesting that dried or preserved meat would be less preferable but not entirely unacceptable and that foods approved under the prison's amended policy (which allow dried game meat sealed by a manufacturer in a clear pouch) would be acceptable. The court also cited the testimony of Schlemm's expert witness that Native Americans have historically preserved game

meat, called pemmican, which is "traditional [N]ative American food." Comparatively, the court found Schlemm's testimony insisting that the meat must be fresh vague, unpersuasive, and unsupported. The court briefly observed in a footnote that Schlemm offered no evidence that obtaining fresh meat from a restaurant or a caterer was even feasible.

The court then explained that it was not persuaded that the Department's policies limiting Schlemm's access to game meat and frybread reflected the least-restrictive means of furthering a compelling government interest in security and order. However, the court also stated that the Department offered compelling arguments why it prohibited inmates from receiving fresh outside food and that "real security and administrative challenges" would arise if inmates were permitted to order meals from restaurants or caterers.

The court then announced the terms of the injunction it would enter to protect Schlemm's religious exercise. First, the court ordered that Schlemm be permitted to possess and wear a particular headband in his cell and during religious services. It also ordered the Department to allow approved spiritual advisors or volunteers to bring "traditional foods for the annual Native American Ghost Feast … in sufficient quantity such that plaintiff and every other attending inmate is able to partake of a meaningful amount of traditional foods." The court specified that the "traditional foods" should include the "spirit foods" already approved under the existing policy, as well as frybread, which need not be shelf-stable.

In other words, the injunction carved out two exceptions to the existing policy: first, it eliminated the arbitrary 16-ounce limit on the amount of food a spiritual advisor may bring to the Ghost Feast, and second, it permitted Schlemm and others to obtain frybread, even though it is not shelf-stable. But it allowed the prison to continue refusing fresh meat from outside restaurants and caterers. Finally, if no volunteers were available, Schlemm and others could order their own meal "consistent with the new Religious Diets Program," which permits inmates to request "individual accommodation[s] to purchase an individual portion of a shelf-stable ceremonial food item for personal consumption" from a commercial vendor.

Schlemm moved to amend the judgment to allow him access to fresh meat. *See* FED. R. CIV. P. 59(e). When the court denied his motion, he appealed. He also filed several more motions, including multiple motions to hold prison officials in contempt and a motion for relief from the judgment.

Schlemm makes many arguments on appeal, but his primary and strongest argument is that the injunction does not satisfactorily protect his rights under the Act, so we begin there. As a threshold matter, we note that Schlemm mostly frames his argument in terms of the denial of his Rule 59(e) motion. His notice of appeal mentions parenthetically "the final judgment" of the district court but identifies the orders appealed from as "the denial of [his] [m]otion to alter or amend the judgment," and others, but not the injunction order. But, given the timing of Schlemm's Rule 59(e) motion, the ruling, and the notice of appeal, his notice is sufficient to bring up the judgment itself, and we will assume in his favor that he challenges both the partial denial of his request for a permanent injunction and the post-judgment motion as well. We review a district court's grant or denial of a permanent injunction for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo. *3M v. Pribyl*, 259 F.3d 587, 597 (7th Cir. 2001). We review the denial of a Rule 59(e) motion for abuse of discretion. *See Obriecht v. Raemisch*, 517 F.3d 489, 492, 494 (7th Cir. 2008).

Even construing Schlemm's argument broadly, *see Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017), we do not believe the district court erred legally or factually in analyzing Schlemm's RLUIPA claims. (We therefore find no abuse of discretion in the denial of Schlemm's Rule 59(e) motion, either.) RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution," unless "imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The district court determined that the Department's policies presented a substantial burden to his religious exercise by requiring him to "engage in conduct that seriously violates [his] religious beliefs." *Hobby Lobby*, 134 S. Ct. at 2775. That conduct included arbitrarily limiting the amount of food and barring frybread simply because it is not shelf-stable. But the court also concluded that Schlemm, though entitled to game meat, failed to show that providing fresh, as opposed to preserved or dried, meat is the only way to avoid violating his religious beliefs.

The district judge based this conclusion on his determination of the credibility of Schlemm's testimony and his weighing of the other testimony and evidence. We review such conclusions with deference and ask only whether the judge clearly erred. *See Furry v. United States*, 712 F.3d 988, 992 (7th Cir. 2013); *see also Ali v. Stephens*, 822 F.3d 776, 783–84 (5th Cir. 2016) (invoking clear-error standard in RLUIPA context). We find clear error when we are "left with the definite and firm conviction that a mistake has been

committed," *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985), such as when "the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *Furry*, 712 F.3d at 992 (internal quotation marks and citation omitted).

The district court did not clearly err when it found that Schlemm's own testimony on the need for fresh meat was vague, unpersuasive, and contradicted at times by Schlemm's other evidence. Schlemm had the burden to show that a denial of fresh game meat substantially burdens his religious exercise. *Holt*, 135 S. Ct. at 862. When asked if he could point to evidence showing that a Ghost Feast is "inadequate" without game meat that is fresh and able to be cooked, Schlemm said that he could not. Unlike other cases concerning religious diets, *e.g. Williams v. Annucci*, 895 F.3d 180, 185 (2d Cir. 2018), the district court's injunction does not permit the Department to refuse to accommodate Schlemm, and it does not require Schlemm to forgo participation in the Ghost Feast. *See id.* In light of the district court's view of the evidence presented at trial, the injunction does not require Schlemm to "engage in conduct that seriously violates [his] religious beliefs." *Hobby Lobby*, 134 S. Ct. at 2775.

Even if denying Schlemm fresh game meat were a substantial burden on his religious exercise, we are satisfied that the injunction imposes the least restrictive means of furthering compelling government interests. Prison security is a compelling interest. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). And "although RLUIPA provides substantial protection for the religious exercise of institutionalized persons, it also affords prison officials ample ability to maintain security." *Holt*, 135 S. Ct. at 866. Courts are deferential to prison officials' expertise in this area. *Cutter*, 544 U.S. at 725 n.13. But this deference is not "unquestioning." *Holt*, 135 S. Ct. at 864. The compelling government interest invoked by the defendant should not be "broadly formulated," but must be "more focused" on the application of the challenged policy to the plaintiff. *Id.* at 863 (quoting *Hobby Lobby*, 134 S. Ct. at 2779).

Here, we agree with the district court that the Department's policies arbitrarily limiting the quantity of food and denying access to frybread at the Ghost Feast are not the least-restrictive means of furthering the Department's compelling interests. But that entitles Schlemm to an accommodation, not necessarily a complete exemption from the Department's policies. *See Ali*, 822 F.3d at 789 n.10 (citing *Knight v. Thompson*, 797 F.3d 934, 937 (11th Cir. 2015)); *see also Williams*, 895 F.3d at 193 (remanding because prison did not demonstrate why it could not provide Jewish prisoner "more of the acceptable food it already prepares" or order him prepackaged kosher food).

Requiring the prison to allow outside restaurants and caterers to supply fresh game meat could unduly frustrate the Department's administrative, safety, and security concerns. As the district court explained: "[I]ndividual food portions ordered from a restaurant or caterer would require the prison to implement procedures for arranging delivery or pick-up and inspecting each food item for contraband, not to mention, ensuring that the food is then consumed quickly enough (or otherwise stored safely) to protect against food-borne illness." Moreover, the prison's kitchen "lacks equipment necessary to prepare individual meals." For those reasons, the injunction in this case conforms to RLUIPA's demanding standard.

Schlemm raises several other issues on appeal. First, he challenges the district court's rejection of the other arguments he raised in his Rule 59(e) motion. He asked the court to consider evidence that certain catering companies would be willing to supply "fresh" meat, that game meat should not contain salt, and that one of his witnesses (a spiritual advisor at the prison) was "threatened" that he would not be permitted back at the prison if he testified at trial. But because there is no reason Schlemm could not have presented his evidence about salt or fresh-meat options, it was not "newly discovered." *Obriecht*, 517 F.3d at 494. In any case, the lack of available caterers was not the district court's primary rationale for allowing the ban on fresh meat to persist. And the court permissibly declined to reopen the case based on the alleged threat because Schlemm offered only hearsay evidence (declarations by other inmates about what the spiritual advisor told them), and an email from a Department of Corrections official explained to the spiritual advisor that the Department could not prevent him from acting as an expert witness. Moreover, Schlemm's attorneys retained an expert, whom the district court deemed "impressive," to testify.

Schlemm next challenges the denial of two motions to hold prison officials in contempt of court for violating the injunction, but the district court did not abuse its discretion in deciding either. *See Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 751 (7th Cir. 2007). In the first motion, Schlemm alleged that two volunteers were not informed of the injunction before the 2016 Ghost Feast and that one of them was not allowed to lead it. But the injunction did not require the Department to disseminate the order or allow anyone in particular to lead the feast. In the second motion, Schlemm alleged interference with his ability to wear the headband, both before and after trial, in violation of the preliminary and permanent injunctions. The court ruled that the pre-trial interferences did not violate the preliminary injunction, and the post-trial incident was accidental, short, and followed by an apologetic return

of the headband. Schlemm does not convince us that the court abused its discretion when it determined that he lacked clear and convincing evidence that prison officials violated an express and unequivocal court order on either occasion. *See id.* at 751.

Next, Schlemm argues that the district court erred by not allowing him to proceed to trial with a claim for damages under the First Amendment. During the original proceedings, Schlemm sought First Amendment damages against only two defendants. The district court dismissed the claim because the two defendants were not involved in the contested decisions, and we affirmed that aspect of the judgment. *Schlemm*, 784 F.3d at 366–67. Therefore, no First Amendment claim remained on remand. And the district court did not abuse its discretion by denying Schlemm leave to amend the pleadings to add a First Amendment claim against the Department because the amendment would have been be futile. *See CogniTest Corp. v. Riverside Pub. Co.*, 107 F.3d 493, 499 (7th Cir. 1997). It was not clearly established in 2011 that a policy which denied a Native American inmate fresh game meat and frybread from outside the prison violated the inmate's First Amendment rights. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). That is evidenced by our prior determination that, before *Holt* and *Hobby Lobby*, Schlemm would have lost his claims even under RLUIPA, which is more protective than the First Amendment. Moreover, the Secretary of the Department of Corrections, in his official capacity, cannot be liable for damages under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (defining "person" under § 1983).

Schlemm also challenges the district court's decision not to recruit counsel for him again after his first lawyers withdrew. In reviewing this argument, we are deferential to the district court's decision and ask only whether it was a reasonable one. *Pruitt v. Mote*, 503 F.3d 647, 658–59 (7th Cir. 2007) (en banc). Schlemm had no right to counsel as a civil litigant. *Id.* at 649. We have observed that "there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases" and that "[d]istrict courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). At our urging, the district court recruited attorneys for Schlemm who secured him a trial, but he was displeased when they would not pursue class certification status or seek to substitute the judge. The district court did not abuse its discretion by refusing to recruit counsel a second time.

Lastly, some questions Schlemm raises are not properly before us. For instance, he raises two issues that came up *after* he filed his notice of appeal: his Rule 60(b)

motion and another motion for contempt. The court denied the Rule 60(b) motion and has not yet decided the contempt motion. Because Schlemm failed to file a new or amended notice of appeal as required by Federal Rule of Appellate Procedure 4(a)(4)(B)(ii) after receiving the adverse Rule 60(b) ruling and because there is no district court ruling on the contempt motion, we lack appellate jurisdiction to review the district court's denial of these motions. *See Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012). Schlemm also alleges that defense counsel committed a discovery violation by withholding a document and asks us to take judicial notice, but he did not raise the argument before the district court. Thus, the argument is waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Finally, Schlemm argues that his due-process claim was improperly dismissed. But, on remand from his first appeal, Schlemm never pursued the claim, so he waived it. *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015).

We AFFIRM the judgment of the district court.